HARE (STEVENSON v.). See Case No. 13,-416.

HARE (UNITED STATES v.). See Cases Nos. 15,302–15,305.

---

## Case No. 6,064.

### HARGRAVE v. CREIGHTON.

[1 Woods, 489.] [1]

Circuit Court, S. D. Georgia. April Term, 1873.

CONTRACT FOR PAYMENT OF MONEY—SUIT IN ANOTHER COUNTRY—MEASURE OF DAMAGES.

Where a contract for the payment of money is made in one country, payable in the currency of that country, upon suit brought in another country to recover for breach of the contract, the plaintiff ought to recover such a sum in the

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

currency of the country where the suit is brought, as would be equivalent to the sum to which he would be entitled in the country where the debt is payable, calculated by the real and not the nominal par of exchange.

This case was submitted pro forma to a jury. The only question was upon the amount of the verdict.

Henry R. Jackson, for plaintiff.
R. E. Lester, for defendant.

WOODS, Circuit Judge. This action is founded on several bills of exchange. The following is a copy of one of them: "£166. 13. 4. Manchester, May 2, 1870. Nine months after date, pay to our order one hundred and sixty-six pounds, thirteen shillings and four pence, for value received. Geo. J. Hargrave & Co. To Messrs. Hugh Creighton & Co. 883 Belfast. Payable in London." The other bills are similar, save in amount and time of payment. The bills show that the contracts were made and were to be performed in England. It is admitted that the verdict must go for the plaintiff. The only question controverted is, what ought to be the amount of the verdict? Upon this point plaintiff has introduced the testimony of a witness, who swears that it would require the sum of six thousand and fifty-three dollars and forty-nine cents, to purchase a bill of exchange on London for £1078. 16. 9. This is 26¼ per cent. more than the face value of the bills sued on, and is made up partly in exchange and partly in the premium on gold. The plaintiff claims that he is entitled to this 26¼ per cent., and the defendant denies it.

The question whether, in a case similar to this, the plaintiff would be entitled to exchange, has been decided adversely to the claim in the courts of New York. Thus in Scofield v. Day, 20 Johns. 102, where a promissory note was drawn at Montreal, in the British province of Lower Canada, payable to parties residing in England, it was held, that in a judgment obtained on a note in a court of the state of New York, the plaintiffs were not entitled to any allowance for the current rate of exchange in England at the time of the judgment. So in Martin v. Franklin, 4 Johns. 124, it was held, that when a person in New York purchases goods in England, and is sued here, the creditor can recover the amount at the par of exchange only, and is not entitled to any allowance for the rate of exchange, or for the price of bills on England. The court said, "The debt is to be paid according to the par and not the rate of exchange. It is recoverable and payable here to the plaintiffs or their agent, and the courts are not to inquire into the disposition of the debt after it reaches the hands of the agent." The same doctrine was held in Adams v. Cordis, 8 Pick. 260, as the proper rule in all cases, except bills of exchange. On the other hand, Mr. Justice Story says (Confl. Laws, §§ 308–310): "When a contract is made in one country and is payable in the

currency of that country, and a suit is afterwards brought in another country to recover for the breach of the contract, a question often arises as to the manner in which the amount of the debt is to be ascertained, whether at the nominal or established par value of the two currencies, or according to the rate of exchange at the particular time existing between them. The proper rule would seem to be, in all cases, to allow that sum in the currency of the country where the suit is brought which should approximate most nearly to the amount to which the party is entitled in the country where the debt is payable, calculated by the real par and not the nominal par of exchange. In all cases, we are to take into consideration the place where the money is, by the original contract, payable; for, wheresoever the creditor may sue for it, he is entitled to have an amount equal to what he must pay in order to remit it to that country. Thus, if a note were given in England for £100, payable in England, or, what is the same thing, payable generally, then, in a suit in Massachusetts, the party would be entitled to recover, in addition to the four hundred and forty-four dollars and forty-four cents, the rate of exchange between Massachusetts and England, which is ordinarily from eight to ten per cent. above par. If the exchange were below par, a proportionate reduction should be made, so that the party would have his money replaced in England at exactly the same amount he would be entitled to receive in a suit there." In Cash v. Kennion, 11 Ves. 314, Lord Eldon held that if a man in a foreign country agrees to pay £100 in London upon a given day, he ought to have that sum there on that day, and if he fails in that contract, wherever the creditor sues him, the law of that country ought to give him just as much as he would have had if the contract had been performed. Mr. Justice Washington, in the case of Smith v. Shaw [Case No. 13,107], in a suit brought by an English merchant on account for goods shipped to the defendant's testator, where the money was doubtless to be paid in England, and the question was made, whether, it being a sterling debt, it should be turned into currency at the par of exchange, or at the then rate of exchange, held that the debt was payable at the then rate of exchange. See, also, Grant v. Healy [Id. 5,696]; Earl of Dungannon v. Hackett, 1 Eq. Cas. Abr. 288; Ekins v. East India Co., 1 P. Wms. 395. It seems to me, not only that the weight of authority, but the weight of reason is with the plaintiff on this question. The defendants agree to pay their debt to the plaintiffs on a day certain, in London. They break their contract, and remove to America, where the plaintiffs are compelled to follow them. Is not the plaintiff entitled to the same fruits of his contract at the hands of a court of justice as if the contract had been kept? And ought the defendants to be allowed, by breaking their contract, to make it any the less valuable to the plaintiff, and ought they to derive benefit from their own wrong in violating their promise by being allowed to pay their debt in a cheaper currency than would have been required had they kept their contract? These questions, it seems to me, should be answered in the negative. The legal tender act cannot affect this question. The point is, what is due from the defendants to the plaintiff on their contract? When that is ascertained, the amount is solvable in currency. Let the verdict be for $6,053.49, the amount claimed by plaintiffs.